IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| APRIL SCHILL, | ) | CASE NO. 1:12-CV-1626 |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | KENNETH S. McHARGH |
| | ) | |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | MEMORANDUM OPINION & ORDER |
| SECURITY ADMINISTRATION, | ) | |
| | ) | |
| Defendant. | ) | |

This case is before the Magistrate Judge pursuant to the consent of the parties.  (Doc. 15). The issue before the undersigned is whether the final decision of the Commissioner of Social Security (the "Commissioner") denying April Schill's applications for a Period of Disability and Disability Insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 416(i) and 423, and Supplemental Security Income benefits under Title XVI of the Social Security Act, 42 U.S.C. § 1381 *et seq*., is supported by substantial evidence and, therefore, conclusive.

For the reasons set forth below, the Court AFFIRMS the decision of the Commissioner.

## I.  INTRODUCTION & PROCEDURAL HISTORY

On October 5, 2007, April Schill ("Schill") applied for a Period of Disability and Disability Insurance benefits as well as Supplemental Security Income benefits.  (Tr. 20, 73-76). Schill alleged she became disabled on January 1, 2005, due to suffering from bipolar disorder, anxiety, manic depression, sleeping disorder, mood disorder, scoliosis, and a herniated disc. (Tr. 237-39; 240-47).

The Social Security Administration denied Schill's applications on initial review on January 11, 2008.  (Tr. 77-80, 81-83).   Her applications were also denied upon reconsideration

on February 6, 2009.  (Tr. 87-93, 94-100).  Thereafter, Schill requested a hearing before an administrative law judge to contest the denial of her applications.  (Tr. 101).  The administration granted Plaintiff's request and scheduled a hearing.  (Tr. 102-03).

On September 7, 2010, Administrative Law Judge Jerry Faust (the "ALJ") convened a hearing to evaluate Plaintiff's applications.  (Tr. 37-72).  Schill, represented by counsel, appeared and testified before the ALJ.  (*Id*.).  A vocational expert (the "VE"), Kevin Yee, also appeared and testified at the proceeding.  (*Id*.).

On September 16, 2010, the ALJ issued an unfavorable decision finding Schill was not disabled.  (Tr. 17-31).  After applying the five-step sequential analysis,[1] the ALJ determined Schill retained the ability to perform work existing in significant numbers in the national economy.  (*Id*.).  Subsequently, Schill requested review of the ALJ's decision from the Appeals Council of the Office of Disability Adjudication and Review.  (Tr. 14-16).  However, the council

---

[1] The Social Security Administration regulations require an ALJ to follow a five-step sequential analysis in making a determination as to "disability."  *See* 20 C.F.R. § 416.920(a). The Sixth Circuit has summarized the five steps as follows:

(1)     If a claimant is doing substantial gainful activity – i.e., working for profit – she is not disabled.

(2)     If a claimant is not doing substantial gainful activity, her impairment must be severe before she can be found to be disabled.

(3)     If a claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and her impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

(4)     If a claimant's impairment does not prevent her from doing her past relevant work, she is not disabled.

(5)     Even if a claimant's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that accommodates her residual functional capacity and vocational factors (age, education, skills, etc.), she is not disabled.

*Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990); *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001).

denied Schill's request making the ALJ's decision the final decision of the Commissioner.  (Tr. 1-4).  Plaintiff now seeks judicial review of the ALJ's decision.  Review is proper pursuant to 42 U.S.C. § 405(g).

## II.  PERSONAL INFORMATION

Schill was born on March 1, 1981, and was 29 years old on the date of the hearing before the ALJ.  (Tr. 73, 41).  Accordingly, at all times, she was considered as a "younger person" for Social Security purposes.  *See* 20 C.F.R. §§ 416.963(c), 404.1563(c).  Schill completed the eleventh grade.  (Tr. 42).  Her past experience includes work as a state nurse assistant, server, credit card clerk, telephone answering clerk, and sales clerk.  (Tr. 60-61).

## III.  THE ALJ's DECISION

The ALJ made the following findings of fact and conclusions of law:

1.  The claimant meets the insured status requirements of the Social Security Act through December 31, 2010.
2.  The claimant has not engaged in substantial gainful activity since January 1, 2005, the alleged onset date.
3.  The claimant has the following severe impairments: lumbar degenerative disc disease, cervical disc disease, bipolar disorder, anxiety disorder and a personality disorder.
4.  The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.
5.  After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work. However, the claimant can only perform simple routine tasks that require only occasional contact with co-workers, supervisors, and the public.
6.  The claimant is unable to perform her past relevant work as a Nurse Assistant, Restaurant Server, Credit Card Clerk, Telephone Answering Services Clerk, or Pet Store Sales Clerk.
7.  The claimant was born on March 1, 1981 and was 23 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date.
. . .
10.  Considering, the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers, in the national economy that the claimant can perform.

11.     The claimant has not been under a disability, as defined in the Social
        Security Act, from January 1, 2005, through the date of this decision.

(Tr. 22-30) (internal citations omitted).

## IV.  DISABILITY STANDARD

A claimant is entitled to receive Disability Insurance and/or Supplemental Security Income benefits only when she establishes disability within the meaning of the Social Security Act.  *See* 42 U.S.C. §§ 423, 1381.  A claimant is considered disabled when she cannot perform "substantial gainful employment by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve (12) months."  *See* 20 C.F.R. §§ 404.1505, 416.905.

## V.  STANDARD OF REVIEW

Judicial review of the Commissioner's benefits decision is limited to a determination of whether, based on the record as a whole, the Commissioner's decision is supported by substantial evidence, and whether, in making that decision, the Commissioner employed the proper legal standards.  *See Cunningham v. Apfel*, 12 F. App'x 361, 362 (6th Cir. 2001); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984); *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "Substantial evidence" has been defined as more than a scintilla of evidence but less than a preponderance of the evidence.  *See Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981).  Thus, if the record evidence is of such a nature that a reasonable mind might accept it as adequate support for the Commissioner's final benefits determination, then that determination must be affirmed.  *Id.*  The Commissioner's determination must stand if supported by substantial evidence, regardless of whether this Court would resolve the issues of fact in dispute differently or substantial evidence also supports the opposite conclusion.  *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir.

4

1983).  This Court may not try the case de novo, resolve conflicts in the evidence, or decide questions of credibility.  *See Garner*, 745 F.2d at 387.  However, it may examine all the evidence in the record in making its decision, regardless of whether such evidence was cited in the Commissioner's final decision.  *See Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989).

## VI.  ANALYSIS

On appeal to this Court, Schill maintains that the ALJ erred by: 1) improperly weighing the opinions of numerous medical sources, which resulted in an erroneous residual functional capacity ("RFC"); 2) discounting her allegations of pain; 3) failing to fully accommodate for her mental limitations in his RFC; and 4) applying the substantial evidence standard of review when making his decision.  In addition, Schill argues that the Appeals Council failed to consider new evidence when denying her appeal.  For the reasons that follow, the undersigned finds that Plaintiff's assignments of error should be overruled.

### A.  Medical Opinion Evidence

#### 1.  Treating Physician

When assessing the medical evidence contained within a claimant's file, it is well-established that an ALJ must give special attention to the findings of the claimant's treating source.  *See Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).  The treating source doctrine recognizes that physicians who have a long-standing treating relationship with an individual are better equipped to provide a complete picture of the individual's health and treatment history.  *Id.*; 20 C.F.R. §§ 404.1527(d)(2), 416.927(c)(2).  Under the Social Security Regulations, opinions from such physicians are entitled to controlling weight if the opinion (1) "is well-supported by medically acceptable clinical and laboratory diagnostic techniques," and

(2) "is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. §§ 404.1527(d)(2), 416.927(c)(2).

The treating source's opinions are not entitled to such deference, however, if they are unsupported by the medical data in the record, or are inconsistent with the other substantial evidence in the record. *See Miller v. Sec'y of Health & Human Servs.*, No. 91-1325, 1991 WL 229979, at *2 (6th Cir. Nov. 7, 1991) (Table). When the treating physician's opinions are not entitled to controlling weight, the ALJ must apply specific factors to determine how much weight to give the opinion. *Wilson*, 378 F.3d at 544. These factors include the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, the supportability of the opinion, and the physician's specialization. 20 C.F.R. §§ 404.1527(d)(2)-(5), 416.927(c)(2)-(6). The regulations also advise the ALJ to provide "good reasons" for the weight accorded to the treating source's opinion. 20 C.F.R. §§ 404.1527(d), 416.927(c)(2). Regardless of how much weight is assigned to the treating physician's opinions, the ALJ retains the power to make the ultimate decision of whether the claimant is disabled. *Walker v. Sec'y of Health & Human Servs.*, 980 F.2d 1066, 1070 (6th Cir. 1992) (citing *King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984)).

In the present case, Plaintiff argues that the ALJ did not adhere to the treating source doctrine in his evaluation of Dr. Bharat Shah's opinions.  In November 2006, Dr. Shah completed a Basic Medical form statement in which he found that Plaintiff was able to stand, walk, or sit for 2 to 4 hours with an at will sit-stand option. (Tr. 813-14).  The doctor found that Plaintiff had moderate limitations in regard to pushing/pulling and was markedly limited in her ability to bend and reach.  Dr. Shah also indicated that Schill could lift up to 5 pounds frequently and up to 10 pounds occasionally.

Plaintiff alleges that the ALJ improperly rejected Dr. Shah's opinions on the sole basis that Schill misinformed medical sources.  This misconstrues the ALJ's decision.  The ALJ explained that he gave Dr. Shah's opinions "little weight" because Dr. Shah's findings were "premised on statements made by the claimant—who the record demonstrates has a history of not being honest with her medical providers." (Tr. 28).  The ALJ's rejection of Dr. Shah's opinions was twofold. First, the ALJ implicitly rejected Dr. Shah's opinion because they were based on statements made by Schill instead of objective medical evidence.  Second, the ALJ explained that Schill's lack of candor with her healthcare providers, including Dr. Shah, made Dr. Shah's report of even less importance because it was based on Schill's unreliable reports about her health.[2] On the Basic Medical form, Dr. Shah did not substantiate his opinions with observations or medical findings, but instead wrote "see attached" in the space provided for his rationale. (Tr. 813-14).  While the record does not include attachments to the report and Plaintiff does not point to medical evidence supporting these findings, the ALJ also provided no proof that the doctor blindly relied upon Schill's statements.  Thus, it is not clear whether Dr. Shah based his opinions solely on Plaintiff's subjective complaints, and if he did so, whether this constituted good reason for rejecting the doctor's report.  Even so, the Court need not make these determinations, because the ALJ's decision provides other good reasons for giving little weight to Dr. Shah's opinions.

The Sixth Circuit has found that if an ALJ does not expressly give good reasons for rejecting the opinion of a treating source, reversal and remand may not be required if the violation is *de minimis*. *Hall v. Comm'r of Soc. Sec.*, 148 F. App'x 456, 462 (6th Cir. 2005)

---

[2] Plaintiff also argues that the ALJ failed to point out any false statements she made to her medical providers. This is incorrect.  The ALJ pointed out a number of inaccurate statements Schill made to her doctors.  For example, Plaintiff told Dr. Shah that she was taking her prescribed medication "as needed" for her back pain, when a drug test revealed that she was entirely non-complaint. (Tr. 702).

(citing *Wilson*, 378 F.3d at 547).  A *de minimis* violation occurs "where the Commissioner has met the goal of 20 C.F.R. § 404.1527(d)(2)—the provision of the procedural safeguard of reasons—even though she has not complied with the terms of the regulation." *Id.* (*quoting Wilson*, 378 F.3d at 547).  An ALJ may meet the goal of the good reasons requirement if he indirectly attacks the supportability of the treating physician's opinions and the consistency of those opinions with the rest of the record evidence. *See Nelson v. Comm'r of Soc.*, 195 F. App'x 462, 470 (6th Cir. 2006) (per curiam).  In *Nelson*, the court found that the ALJ's analysis of the record evidence contrary to the treating physicians' opinions adequately addressed the treating physicians' opinions by indirectly attacking both their supportability and their consistency with the other record evidence. *Id.*

In the case *sub judice*, the ALJ's error was harmless because the ALJ's overall decision met the intended goal of the treating source doctrine, although the ALJ did not comply with the regulation in fact.  To begin, the ALJ implicitly found that Dr. Shah failed to provide medical evidence supporting his findings on the Basic Medical form.  Dr. Shah's omission inherently weakened the import of his findings and corroborated that the opinion was unsupported by medical evidence.  Though not expressly stated by the ALJ, Dr. Shah's form indicated that the limits listed were expected to last only 30 days to 9 months, which does not meet the durational requirement[3] for disability and diminishes the weight of Dr. Shah's opinions.

Moreover, the ALJ thoroughly discussed medical opinion evidence that did not support Dr. Shah's findings.  For example, the ALJ noted that in January 2008, Dr. Nick Albert reviewed Plaintiff's medical records, including Dr. Shah's treatment records, and concluded that Plaintiff

---

[3] "The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a).

was capable of medium work. (Tr. 534-41). Contrary to Dr. Shah's findings, Dr. Albert noted that Plaintiff could stand, walk, or sit for 6 hours with normal breaks.  In addition, Dr. Albert noted that Plaintiff could lift up to 25 pounds frequently, in contrast to Dr. Shah's finding of only 5 pounds.  Dr. Albert noted no limitations in terms of handling.  The doctor found Plaintiff was limited in regard to pushing and pulling, but only in that she could frequently use hand controls with her left arm.  Dr. Albert also found Schill limited in terms of reaching, however the limitation was tailored to occasional over-head reaching with her left arm.  Additionally, the ALJ commented that in February 2009, Dr. Jerry McCloud affirmed Dr. Albert's RFC. (Tr. 712).

Furthermore, the ALJ described Schill's conservative course of pain management treatment with Dr. John Nickels and her admissions to healthcare providers, which failed to support Dr. Shah's opinions.  The ALJ noted that during a September 2009 treatment with Dr. Nickels's staff, Schill reported her pain was "managed well" and she was feeling better overall. (Tr. 782).  Plaintiff's gait was steady, shoulder range of motion was normal, and left hand grip was good. (Tr. 785).  The ALJ also referred to an April 2010 report where Plaintiff said she was doing well, her medication assisted with her pain, and she was observed to be "ambulating easily." (Tr. 777).  Based on the ALJ's examination and discussion of the record, which contradicted and failed to support Dr. Shah's opinions, the undersigned finds that the ALJ's analysis of Dr. Shah's opinion constituted harmless error.

## 2.  One-Time Examining Physician

Next, Plaintiff argues that the ALJ erred by failing to credit Dr. Rebecca Schroeder's limitations.  Dr. Schroeder examined Plaintiff on only one occasion in November 2008 and completed a Basic Medical form. The doctor found that Schill could stand or walk for 2 hours and sit for 2 hours.  She also found marked bending, reaching, and pushing/pulling restrictions.

9

The ALJ rejected these findings on the basis that Dr. Schroeder, like Dr. Shah, relied on Plaintiff's subjective complaints rather than medical findings.

Opinions from medical professionals who have only examined the claimant on one occasion cannot be deemed treating sources, nor are their opinions entitled to any special degree of deference.  *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994).  Given that Dr. Schroeder examined Schill on only one occasion, her opinions were not entitled to any special deference, permitting the ALJ to discount them without giving "good reasons."  Furthermore, the ALJ relied on medical evidence, which undermined Dr. Schroeder's findings, including the opinions of Dr. Albert and Dr. McCloud and Schill's admissions of improvement and controlled pain in 2009 and 2010.   Though the ALJ assumed that Dr. Schroeder relied on Plaintiff's subjective complaints when making her findings, it is at least clear that on her Basic Medical form, Dr. Schroeder did not describe the medical evidence that supported her findings, making them of less import. (Tr.708-10).  Thus, the ALJ's decision to discredit Dr. Schroeder's opinions was supported by substantial evidence.

Regarding both Drs. Schroeder and Shah, Plaintiff alleges that the ALJ erred by failing to "apply all" of the factors denoted in 20 C.F.R. § 416.927(c) in explaining the weight he attributed to the doctors' opinions.  However, Plaintiff does not cite any legal authority to support this contention.  The text of the Regulation provides that the ALJ must only "consider" the various factors when assessing a claimant's credibility. 20 C.F.R. § 416.927(c).  It is well established that an ALJ is under no obligation to mention every piece of evidence presented to him to show that such evidence was considered.  *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. App'x. 496, 507 (6th Cir. 2006) (per curiam) (quoting *Loral Defense Systems-Akron v. N.L.R.B.*, 200 F.3d 436, 453 (6th Cir. 1999)).  While including a thorough assessment of each factor might

be helpful in assisting a claimant to better understand the ALJ's decision, so long as the ALJ's opinion clearly conveys why the doctor's opinion was credited or rejected, the ALJ has satisfied his burden. *See Francis v. Comm'r of Soc. Sec.*, 414 F. App'x 802, 804 (6th Cir. 2011). Moreover, a review of the ALJ's opinion supports the conclusion that the ALJ did consider these factors.  For example, the regulation indicates that the ALJ may account for a physician's "specialization." 20 C.F.R. 404.1572(c)(5).  Here, the ALJ explained that Dr. Schroeder was a family doctor, not a rehabilitative specialist, making her opinion about Schill's pain of lesser consequence. (Tr. 28).

### 3.  State Agency Non-Examining Physicians

Next, Plaintiff alleges that the ALJ failed to fully credit the opinions of state agency examiners Drs. Albert and McCloud.  Both doctors opined that Schill could reach overhead with her left arm occasionally and use her left arm frequently to operate hand controls. (Tr. 537-38, 712).  Plaintiff asserts that the ALJ erred by failing to mention and provide reasons for rejecting these limitations on the use of her non-dominant left arm. (Tr. 42).

Given that Drs. Albert and McCloud were not treating sources, the good reasons rule does not apply.  Thus, the ALJ was not required to adopt all of the examiners' opinions or give reasons for rejecting them.  Moreover, both doctors found Plaintiff capable of performing medium work, even with the limitations on her left arm.

Furthermore, it was Plaintiff's burden to prove her impairments so restricted her ability to work. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004).  Plaintiff has not carried that burden.  Schill's medical records reveal that she first reported left arm pain and weakness in October 2006. (Tr. 429).  The symptoms arose suddenly and without explanation (Tr. 429), and as Defendant explains, appeared to quickly disappear, with Schill reporting to Dr. Shah that her

left arm was improved in January 2007. (Tr. 385).  Following her February 2007 discharge from

Dr. Shah, Plaintiff points to no other medical records that contain complaints about her left arm

or additional treatment for her symptoms.   A September 2009 examination showed Plaintiff's

shoulder range of motion was normal and her left hand grip was good. (Tr. 785).   At the oral

hearing, the ALJ asked whether Plaintiff wished to discuss any physical issues aside from her

back, neck, and hip problems. (Tr. 48). Plaintiff answered that she had no other physical issues.

(*Id.*).   At no time during the hearing did Plaintiff complain of left arm problems.  Nor did she

contest the ALJ's hypothetical questions to the VE, which did not contain any push/pull or

reaching limitations. In addition, Plaintiff does not contest that the jobs the VE found she was

capable of performing—mail clerk, carwash attendant, and housekeeper—were affected by these

limitations on her non-dominant arm. (Tr. 68-69).

Schill takes issue with the ALJ's evaluation of Drs. Albert and McCloud's opinions on

one more ground.  Plaintiff notes that the doctors were not aware of the size of her herniated disk

at L5-S1 which a July 2009 MRI revealed was "large." (Tr. 806).  She maintains that this

subsequent MRI result makes those parts of the doctors' opinions that were unfavorable to a

finding of disability of less importance.  In fact, the ALJ noted, as Plaintiff contends, that she is

more limited than these state-agency examiners found her to be.  The ALJ took all of the record

evidence into account when making his RFC determination, including medical records that

developed after the state examiners' reports.  The ALJ wrote that "although the opinions of Drs.

Albert and McCloud are persuasive as to the claimant's functional capacity, the undersigned

finds that the record as a whole suggests that the more fitting exertional level is light rather than

medium." (Tr. 28).  The ALJ examined the extent to which Dr. Albert and McCloud's findings

were consistent with other parts of the records and then assigned weight as was appropriate.

12

Furthermore, the ALJ acknowledged the MRI results, but noted that the record as a whole undermined the severity of Plaintiff's symptoms about her neck and back. (Tr. 26).  It has been long-recognized that the mere diagnosis of a condition does not speak to the severity of the condition. *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988).  Schill's medical records after the MRI showed that she reported her pain level was improving and managed.  The ALJ pointed to Plaintiff's sessions with Dr. Nickels and his staff in September 2009 and April 2010 where Schill said that she was feeling better overall and her medication was effective. (Tr. 782, 777).  Plaintiff does not point to medical records following the 2009 MRI that imposed limitation as a result of her herniated disc.  Thus, the MRI findings alone do not support Schill's allegation that the state-agency doctors' opinions should have been accorded lesser weight than the ALJ assigned.

### B.  Credibility Assessment

It is the ALJ's responsibility to make decisions regarding the credibility of witnesses.  "An ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since [the] ALJ is charged with the duty of observing a witness's demeanor and credibility." *Vance v. Comm'r of Soc. Sec.*, 260 F. App'x 801, 806 (6th Cir. 2008) (citing *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997)).  Notwithstanding, the ALJ's credibility finding must be supported by substantial evidence, *Walters*, 127 F.3d at 531, as the ALJ is "not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.' " *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007).

The Sixth Circuit follows a two-step process in the evaluation of a claimant's subjective complaints of disabling pain.  20 C.F.R. §§ 416.929(a), 404.1529(a); *Rogers,* 486 F.3d at 247; *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853-54 (6th Cir. 1986); *Felisky v.*

_Bowen_, 35 F.3d 1027, 1039-40 (6th Cir. 1994).  First, the ALJ must determine whether the claimant has an underlying medically determinable impairment which could reasonably be expected to produce the claimant's symptoms.  _Rogers_, 486 F.3d at 247.  Second, if such an impairment exists, then the ALJ must evaluate the intensity, persistence and limiting effects of the symptoms on the claimant's ability to work. _Id._  The ALJ should consider the following factors in evaluating the claimant's symptoms:  the claimant's daily activities; the location, duration, frequency and intensity of the claimant's symptoms; any precipitating or aggravating factors; the type, dosage, effectiveness and side effects of any medication taken to alleviate the symptoms; treatment, other than medication, the claimant receives to relieve the pain; measures used by the claimant to relieve the symptoms; and statements from the claimant and the claimant's treating and examining physicians. _Id._; _see Felisky_, 35 F.3d at 1039-40; SSR 96-7p.

Here, the ALJ applied the two-step test and at step two concluded that Schill's statements regarding the intensity, persistence, and limiting effects of her symptoms were not fully credible. When making his credibility determination, the ALJ considered the factors listed in SSR 96-7p and all of the evidence in the record.  The ALJ's opinion provided a number of good reasons for discrediting Plaintiff's testimony.  Despite the ALJ's reasonable justifications, Plaintiff alleges that the ALJ committed three specific errors and his finding was not supported by substantial evidence.  The Court finds that Schill's allegations lack merit.

First, Schill maintains that the ALJ mistakenly found that she "exaggerated" about her left arm condition during an examination with Dr. Dhruv Patel.  Though Dr. Patel did not use the word "exaggerate," Dr. Patel's report indicated that Plaintiff had not performed the physical examination to her full ability.  Dr. Patel wrote: "The patient's weakness is amplified secondary to pain as well as the patient's decreased voluntary efforts to move the arm. These findings are

14

based on notable movements of her left arm when performing voluntary movements on her own, such as getting out of bed." (Tr. 430).  Based on this statement, it appears that Dr. Patel found Plaintiff displayed more strength and movement in her arm when she was not being examined, and thus was not entirely honest during the formal evaluation. SSR 96-7p provides that the ALJ should take into account statements from examining physicians when evaluating credibility. SSR 96-7p. Thus, the undersigned cannot find that the ALJ erred.

Next, Plaintiff alleges that the ALJ found she falsely testified that she was not presently abusing substances, when in reality, she was telling the truth.  In his opinion, the ALJ wrote:

> At the hearing, the claimant continued to be less than fully candid.  When questioned by the undersigned about illicit drug or alcohol abuse, the claimant only acknowledged a history of alcohol abuse.  She later admitted to using marijuana, but only when prompted by her representative.  The claimant never acknowledged using cocaine. (Tr. 27).

When the ALJ's opinion is read in context with Plaintiff's hearing testimony where she failed to truthfully describe her prior drug use (Tr. 58), it becomes clear that the ALJ's opinion was solely referring to Plaintiff's dishonesty about her history of substance abuse, not her current use.  The ALJ's determination that Plaintiff's substance abuse was in remission supports this reading of the ALJ's opinion. (Tr. 23).

Plaintiff also argues that it was improper for the ALJ to discredit her testimony based on her failure to disclose all of the illicit drugs she had used when the ALJ and her attorney questioned her at the hearing.  The following exchanged occurred between the ALJ and Schill:

> Q:    Been convicted of any crimes?
> A:    I've been convicted of a DUI.  And I've been sober since September 29th of last year.  This year I will have one year I have not used anything.
>       . . .
> Q:    So you are coming up on a year [of sobriety]?
> A:    Yes, your Honor.
> Q:    *Use* anything else besides the alcohol?
> A:    No, your Honor, just my prescribed medication.

15

> Q:      Do you abuse your prescribed medications?
> A:      No.

(Tr. 51-52) (emphasis added).

Based on the ALJ's line of questioning, it is not clear whether the ALJ was asking Plaintiff about her past and/or present substance abuse, and whether Plaintiff should have known to disclose her history of marijuana and cocaine use.  However, when Schill's attorney clearly prompted her to discuss what drugs she had used in the past, Plaintiff admitted using only marijuana, even though she had previously tested positive for cocaine. (Tr. 58).  Regardless of whether the ALJ's decision to discredit Plaintiff because of her omission at her oral hearing was appropriate, the ALJ provided sufficient reasons for finding Plaintiff not fully credible.

Lastly, Plaintiff alleges that the ALJ incorrectly discredited her based on testimony about her participation in a band.  The ALJ noted that during the September 2010 hearing, Plaintiff said she had participated in a band "a couple" of summers ago, when she reported to medical providers that she sang in a band as early as one year before, in September 2009. (Tr. 26, 782). Though the ALJ's decision to discredit Plaintiff based on this arguable contradiction alone would not be sufficient, the ALJ did not base his entire credibility analysis upon it.

To support his credibility determination, the ALJ recounted numerous occasions when Plaintiff was dishonest with healthcare providers.  The ALJ referenced Dr. Shah's statement that Plaintiff had lied about taking her prescription medication. (Tr. 702).  Dr. Kancherla Rao also indicated that Schill denied using drugs, when she had tested positive for cocaine. (Tr. 501).  Dr. Albert found Plaintiff's complaints were only partially credible and medical evidence did not support the alleged severity of her symptoms. (Tr. 539).

The ALJ also found that portions of Plaintiff's testimony about her mental limitations did not comport with other parts of her testimony and treatment records.  For instance, Plaintiff

16

testified that she struggled with mood fluctuation and fear arising out of her mental impairments. (Tr. 28, 48-49).  However, the ALJ explained that Schill also testified that her medication and mental health treatments kept her stable. (Tr. 49).  Schill's medical records showed that treatment helped to improve her condition and undermined the severity of her alleged symptoms. For example, the ALJ cited to 2009 records from the Nord Center where Plaintiff underwent psychotherapy counseling. (Tr. 28).  These records showed that Schill had a stable mood and symptoms as observed by healthcare providers on numerous occasions and Plaintiff herself. (Tr. 748, 753, 756).  The ALJ also noted that Plaintiff was described as being "pleasant" when she reported for pain management treatment sessions with Dr. Nickels. (Tr. 777, 782).  Plaintiff carries the burden to show that substantial evidence did not support the ALJ's credibility determination.  An ALJ's ruling must stand so long as it is supported by substantial evidence, even though substantial evidence might also support a difference conclusion. *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (quoting *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).  Plaintiff has failed to carry her burden, and as a result, the undersigned must affirm.

### C.  RFC Non-Exertional Limitations

Plaintiff argues that the ALJ's determination of his RFC failed to sufficiently address her mental limitations.  At step three of the sequential analysis, the ALJ found that Plaintiff had "moderate difficulties" with regard to concentration, persistence, or pace. (Tr. 24).  The ALJ then assigned the following mental restrictions in his RFC: "the claimant can only perform simple routine tasks that require only occasional contact with co-workers, supervisors, and the public." (Tr. 25).  The VE identified three jobs that Plaintiff could perform despite these impairments: housekeeper, mail clerk, and carwash attendant. (Tr. 68-69).

Schill argues that the RFC and subsequent hypothetical question did not sufficiently address her moderate difficulties in concentration, persistence, and pace.  Plaintiff cites to *Ealy v. Commissioner of Social Security*, 594 F.3d 504 (6th Circ. 2010) and other cases from this district in support of her contention.  The law in this district on the proper application of *Ealy* remains in the development stage, as shown by the authorities Plaintiff cites.  However, a finding of moderate impairment in concentration, persistence or pace, without additional limitations, will not render a limitation to simple, repetitive work inadequate.  This Court has found that "*Ealy* does not require further limitations in addition to limiting a claimant to 'simple, repetitive tasks' for every individual found to have moderate difficulties in concentration, persistence, or pace." *Jackson v. Comm'r of Soc. Sec.*, 1:10-cv-763, 2011 WL 4943966, at *4 (N.D. Ohio Oct 18, 2011).  Instead, "*Ealy* advocates a fact-based approach to determine whether, considering the record evidence, the plaintiff required specific limitations regarding his or her moderate difficulties with concentration, persistence, or pace." *Weagraff v. Comm'r of Soc. Sec.*, 1:11-cv-2420, 2013 WL 968268 (N.D. Ohio Jan. 7, 2013) *report and recommendation adopted sub nom. Weagraff v. Colvin*, 1:11 CV 2420, 2013 WL 980435 (N.D. Ohio Mar. 7, 2013) (*citing Jackson*, 2011 WL 4943966, at *4).

Here, the record does not support Schill's contention that because the ALJ found her to be moderately limited in concentration, persistence, and pace, the ALJ was required to incorporate additional limitations into the RFC.  Plaintiff points to no medical evidence in the record to support her contention.  Considering the facts in Plaintiff's case, the ALJ did not err in his RFC or hypothetical question posed to the VE.

### D.  Burden of Persuasion

Schill argues that the ALJ applied an incorrect burden of persuasion and remand is warranted.  At one point in his decision, the ALJ stated that the record possessed "*substantial evidence* that contradicts [Schill's] allegations of disability." (Tr. 26) (emphasis added).  Schill maintains that this language sets out a standard that is less than what is required for disability claims.  Plaintiff correctly notes that the appropriate burden of persuasion before an ALJ is the "preponderance of the evidence" standard. 20 C.F.R. § 404.935(a).

Nevertheless, the Court is not persuaded by Plaintiff's argument.  The ALJ's single reference to substantial evidence contradicting Plaintiff's allegations of disability does not suggest to the Court that the ALJ applied some lesser burden of persuasion to support his findings.  Schill cites no other evidence supporting this contention and the Court declines to assume that the ALJ made such a significant error without more evidence showing the breach of his duties.

### E.  Appeals Counsel

Finally, Plaintiff alleges that the Appeals Council did not acknowledge new evidence from doctors Gary Pagano and Lorainne Christian which she submitted with her appellate brief.  Plaintiff is mistaken.  The Appeals Council denied review, finding that there was no basis for granting the claimant's request for review. (Tr. 1-4).  In making its decision, the Appeals Council specifically noted Plaintiff's new evidence, but concluded that the evidence did not provide a basis for changing the ALJ's decision:

> We also looked at a medical source statement and letters from Gary Pagano, M.D., dated February 23, 2012 and a letter from Lorainne Christian, M.D. dated May 24, 2011.  The Administrative Law Judge decided your case through September 16, 2010. This new information is about a later time.  Therefore, it does not affect the decision about whether you were disabled beginning on or before September 16, 2010. (Tr. 2).

The Social Security regulations provide that the Appeals Council must only consider additional evidence when it "relates to the period on or before the date of the administrative law judge hearing." 20 C.F.R. § 404.976(b)(1).  Because the Council reviewed the new evidence and applied the appropriate standard set forth in the regulations, Plaintiff's argument has no merit.

## VII.   DECISION

For the foregoing reasons, the Magistrate Judge finds that the decision of the Commissioner is supported by substantial evidence.  Accordingly, the Court AFFIRMS the decision of the Commissioner.

IT IS SO ORDERED.

s/ Kenneth S. McHargh
Kenneth S. McHargh
United States Magistrate Judge

Date:  October 9, 2013.